UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY      )
COMMISSION,                       )
                                  )
          Plaintiff(s),           )
                                  )
     vs.                          )          Case No. 4:04CV01359 ERW
                                  )
ALLSTATE INSURANCE COMPANY,       )
                                  )
          Defendant(s).           )

**MEMORANDUM AND ORDER**

This case comes before the Court on Plaintiff's Motion for Partial Summary Judgment as

to Liability [doc. #42] and Defendant's Motion for Partial Summary Judgment [doc. #52].

**I. PROCEDURAL BACKGROUND**

The Plaintiff, Equal Employment Opportunity Commission ("Plaintiff"), is suing the

Defendant, Allstate Insurance Company ("Defendant"), for alleged violations of the Age

Discrimination in employment Act of 1967 ("ADEA"), 29 U.S.C. § 626(b). Plaintiff alleges that

Defendant's rehire policy associated with the Preparing for the Future Group Reorganization Plan

("Reorganization Plan"), had an adverse impact on former employee-agents who were members

of the protected age group, and that these former employee-agents were barred from rehire. *Pl.*

*Comp.,* 3-4. Plaintiff further alleges the reasons for the rehire policy articulated by the Defendant

were not reasonable. *Id.* Defendant denies these allegations. Prior to seeking relief in federal

court, the Plaintiff attempted conciliation in accordance with the terms of the ADEA, 29 U.S.C. §

626(b). Following discovery, both parties filed motions for summary judgment.

## II. BACKGROUND FACTS[1]

Prior to November, 1999, the Defendant had a business structure which included the employment of approximately 6,300 employee-agents, who sold Allstate property and casualty insurance. These agents were employed primarily under either a R-830 or R-1500 employment contract. In November, 1999, the Defendant announced its Reorganization Plan, which would terminate the employment contracts of its employee-agents, effective June 30, 2000.[2] Concurrent with the announcement of the Reorganization Plan, the Defendant gave each employee-agent four options upon termination of their contracts. The first two options allowed an employee-agent to become an Exclusive Agent (referred to as an independent contractor agent), the third provided enhanced severance pay on condition of signing a release of legal claims against the Defendant, and the fourth provided base severance pay without requiring the employee agent to sign a release of liability. Under the first two options the employee agent would receive a bonus payment of at least $5,000 and would continue working for the Defendant as an independent contractor agent. One of the conditions of entering a new contract with the Defendant as an independent contractor was that the former employee agent would be required to sign a release of liability. Former employee-agents were given until June 1, 2000, to choose between the four options.

In association with their Reorganization Plan, the Defendant also adopted a rehire policy that was implemented in September, 2000. The policy provided that former employee-agents, who were subject to the Reorganization Plan, would be ineligible for rehire for a period of one year after their termination, or after all payments of any severance benefits had been received.

---

[1]The Court's recitation of the facts is taken from Plaintiff's Statement of Uncontroverted Material Facts and Defendant's Opposition to Plaintiff's Statement of Uncontroverted Material Facts. The Court notes where the parties disagree over the facts.

[2]There were a few exceptions that are not relevant to this lawsuit.

This prevented any former employee-agent from being rehired in a non agent position, as all employee-agent positions had been eliminated, for a period of at least one year and at longest two years from the date of termination, in most cases June 30, 2000. Some former employee-agents were rehired by the Defendant, between their termination date on June 30, 2000, and the implementation of the rehire policy on September 26, 2000. The rehire policy was developed and implemented by Karleen Zuzich, who is Assistant Vice President for Human Resources at Allstate Insurance Company, and was adopted by Allstate Insurance Company. The policy was distributed to the Defendant's regional human resources managers, but the policy was not communicated generally to former employee-agents. This policy applied to all former employee-agents, regardless of age.

## II. STANDING

Although neither party has raised the question, this Court is obligated to examine whether the Plaintiff had standing, within the meaning of Article III of the United States Constitution. *Juidice v. Vail*, 430 U.S. 327, 331 (1977) ("Although raised by neither of the parties, we are first obliged to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Art. III . . ..."); *Boeing v. Van Gemert*, 444 U.S. 472, 488 n.4 (1980) ("Although respondents have not challenged Boeing's standing, we are obligated to consider the issue sua sponte, if necessary."). Under the Federal Rules of Civil Procedure a court shall dismiss the action "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter . . .." Fed. R. Civ. P. 12(h)(3) (2006). "As a jurisdictional requirement . . . standing can be raised by the court sua sponte at any time during the litigation." *Delorme v. U.S.*, 354 F.3d 810 (8th Cir. 2004). This Court will address the question of whether the plaintiff, representing former employees, as opposed to current employees, at the time the

adverse employment action was taken, has standing under the ADEA, as required by Article III of the United States Constitution.

Under the ADEA, "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided*, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter." 29 U.S.C. § 626(c)(1) (emphasis in original). The Eighth Circuit has interpreted the language "any person aggrieved" to require only the threshold standing requirements for a case or controversy. *Horne v. Firemen's Retirement System of St. Louis*, 69 F.3d 233, 235 (8th Cir. 1995) ("[t]he ADEA confers standing to sue upon a 'person aggrieved' by age discrimination . . . reflecting a congressional intent to expand standing to sue to the maximum extent permissible under Article III of the United States Constitution."). The Supreme Court has held that to meet the threshold case or controversy requirement, the plaintiff must show that he has sustained an actual injury, that it is the result of the challenged conduct, and that a favorable decision by the court will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *see also Bill M. ex rel. William M. v. Nebraska Dept. Of Health and Human Services Finance and Support*, 408 F.3d 1096, 1099 (8th Cir. 2005) ("standing requires a party to show actual injury, a causal relation between that injury and the challenged conduct, and the likelihood that a favorable decision by the court will redress the alleged injury.").

Due to the expansive reading that has been given to the ADEA's aggrieved person language, it is clear that the Plaintiff has standing to sue. The Plaintiff, the EEOC, represents a group of former employees that allege an injury as a result of the Defendant's "rehire policy;" that

they were barred from obtaining an alternate position within Allstate.  The Plaintiff challenges the rehire policy, which caused the alleged injury, as violating the ADEA.  If the Plaintiff is successful in proving that the Defendant's rehire policy violates the ADEA, and that the violation caused the claimants' injuries, this Court can redress that injury by providing damages to the claimants.  As provided in the ADEA, the EEOC may bring suit on behalf of an aggrieved person.  29 U.S.C. at 626(c)(1).

## III.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986).  The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).  "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.  Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

The ADEA states, in pertinent part,

> It shall be unlawful for an employer– (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of
such individual's age . . ..

29 U.S.C. § 623(a)(1) & (2) (2006).

The Supreme Court in *Smith v. City of Jackson, Mississippi*, found that a disparate impact

claim is cognizable under the ADEA, under § 623(a)(2).  544 U.S. 228, 228 (2005) ("The ADEA

does authorize recovery in 'disparate-impact' cases . . ..").  In reaching this determination the

Court first looked to precedent interpreting Title VII, which employs identical language to that

used in the ADEA, with the substitution of 'age' for 'race, color, religion, sex, or national origin.'

*Id.* at 233-34 ("[W]e begin with the premise that when Congress uses the same language in two

statutes having similar purposes . . ., it is appropriate to presume that Congress intended that text

to have the same meaning in both statutes.").  In both Title VII and the ADEA the Court  found

the language 'or otherwise adversely affect his status' to subject an employer to liability even

when the employer "classifies his employees without respect to [the protected characteristic] . . .."

*Id.* at 235-36.  This language is focused on the effects of the employer's action, not the

motivation for that action.  *Id.* at 236.

This interpretation is based on the language found in 29 U.S.C. § 623(a)(2) ("or otherwise

adversely affect his status as an employee"); this language is not found in § 623(a)(1).  The

Supreme Court notes that there are "key textual differences between § 4(a)(1) [§ 623(a)(1)],

which does not encompass-disparate-impact liability, and § 4(a)(2)[§ 623(a)(2)]."  *Id.* at 236 n.6.

The Court holds that "an employer who classifies his employees without respect to age may still

be liable under the terms of this paragraph if such classification adversely affects the employee

because of that employee's age-the very definition of disparate impact."  *Id.*  The Supreme

Court's holding in *City of Jackson* is not specifically applicable to a claim under § 623(a)(1),

however the dicta in footnote six clearly states that it is only under § 623(a)(2) that a disparate impact theory is congnizable. *Id.* at 235.

The Supreme Court goes on to address an important distinction between the ADEA and Title VII, in relation to a disparate impact claim. The ADEA in § 623(f)(1) provides that

> [i]t shall not be unlawful for an employer, employment agency, or labor organization- (1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, *or where the differentiation is based on reasonable factors other than age* ....

*Id.* at § 623(f)(1) (emphasis added). This is colloquially known as the 'reasonable factors other than age' requirement (RFOA). The RFOA requirement allows employers to avoid liability if an employment decision, that is shown to have a disparate impact on employees protected under the ADEA, was based on reasonable factors other than the employees' age. *Id.* at 242-243. This provision appears to apply equally to claims under §§ 623(a)(1) and (2), however, as the Supreme Court noted, the provision is unnecessary for disparate-treatment claims under § 623(a)(1). *Id.* at 238. This is because under § 623(a)(1) an employer can legally reject an applicant for a legitimate nondiscriminatory reason without reference to the RFOA provision, because the decision would not be "because of such individuals age." *Id*; 29 U.S.C. at § 623(a)(1). Rather, this provision limits an employer's liability under the disparate-impact theory; allowing an employer to make an employment decision that has a disparate impact on employees over age 40 as long as that decision was reasonable. *City of Jackson*, 544 U.S. at 240.

The basic framework of a disparate impact claim has been recognized in numerous cases in the Eighth Circuit; in fact the Eighth Circuit recognized disparate-impact claims under §§623(a)(1) and (2) before the Court's decision in *City of Jackson*. *See e.g. Leftwich v. Harris-Stowe State College*, 702 F.3d 686, 690 (8th Cir. 1983) (The court quotes the language of §

623(a)(1), and then goes on to describe how a prima facie case of age discrimination is determined under a disparate impact theory.). In order to state a valid claim of disparate impact, "a plaintiff must prove, as a threshold matter, that the challenged employment practice, while facially neutral, has a disparate impact on certain employees 'because of their membership in a protected group.'" *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 950 (8th Cir. 1999).

The Supreme Court and Eighth Circuit precedent clearly support a finding that a disparate impact claim is cognizable under the ADEA. However, in deciding a motion for summary judgment it is necessary to determine who has the burden of production and persuasion on each element of the prima facie case, and any affirmative defenses. Prior to the Supreme Court's decision in *City of Jackson*, the Eighth Circuit had allowed for a claim of disparate impact, and provided guidelines for analyzing such a claim. *Leftwich*, 702 F.2d at 690. Under this analysis the plaintiff had the burden of demonstrating that a facially neutral employment practice excluded a disproportionate number of persons over 40. *Id.* "Once the plaintiff established his prima facie case, the burden of *persuasion* shifted to the defendants to prove that their selection plan was justified by business necessity." *Id.* at 691 (emphasis added). The Eighth Circuit had held that the burden of showing business necessity "is a heavy one," requiring the Defendant to "show that their selection plan has a manifest relationship to the employment in question and that there is a compelling need to maintain the practice." *Id.* at 692 (internal citations omitted).

This burden shifting approach, that was used in Title VII cases, and adopted by the Eighth Circuit in the ADEA context, was implicitly rejected in *City of Jackson*. 544 U.S. at 239. The Supreme Court held that although a disparate impact claim is cognizable under the ADEA it is narrower than under Title VII. *Id.* at 240. The heavy burden placed on the defendant under the business necessity defense is not equivalent to the burden under the RFOA provision. As the

Court points out, "age unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment." *Id.* This narrower scope, requires a different approach than is required under Title VII, and consequently, a different approach from that previously used by the Eighth Circuit in ADEA claims.

Under the ADEA, the Plaintiff must first identify a specific employment practice which is responsible for the disparate impact. *Id.* at 241 ("It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." (Internal quotation omitted)). Secondly, the court must determine the reasonableness of the factors considered by the Defendant in adopting the employment policy. *Id.* In *City of Jackson*, the Court determined that even had the plaintiff pointed to a specific employment practice that resulted in the disparate impact, the defendant's "plan was based on reasonable factors other than age." *Id.* The Court contrasts this with the business necessity test used in Title VII, "which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the *reasonableness inquiry includes no such requirement.*" *Id.* at 243 (emphasis added).

The Supreme Court rejects the business necessity approach, but does not address who has the burden of proving, or disproving, the reasonableness of the factors, other than age, considered by the defendant. A number of court decisions in other circuits have addressed this question, and have unanimously decided that after the plaintiff has presented evidence of a prima facie case of discrimination, the defendant has the burden of production, in raising any factors considered other than age. The plaintiff then has the burden of persuading the factfinder that those factors were

unreasonable.[3]  This is the approach this Court will use in deciding Defendant's and Plaintiff's motions for summary judgment.

## A.  APPLICABLE STATUTORY SECTION

The first question that is raised by the case at bar is under what section of the ADEA does Plaintiff's claim fall, § 623(a)(1) or § 623(a)(2).  The discrimination claimed by the Plaintiff is the failure to "rehire" former employees after they were discharged under the Reorganization Plan.  *Pl. Complaint*, ¶7(b) ("Defendant's rehire moratorium policy had an adverse impact on former employee-agents who were members of the protected age group.").  The Defendant's first argument in support of a finding of summary judgment in its favor is that this claim arises under § 623(a)(1), and therefore is not cognizable under the disparate impact theory.  *Def. Mot. for Partial Sum. Judg.*, 1 ("First, a disparate impact claim with respect to a hiring policy is not cognizable under the ADEA . . ..").  The Plaintiff disagrees with the Defendant's classification of this case as a "hiring case" and rather sees this case as a "rehire case" which is appropriately addressed as a policy that affects the status, of a member of the protected class, as an employee.  *Pl. Mem. in Sup. of Mot. For Partial Sum. Judg.*, 12.  Plaintiff would address this case under § 623(a)(2), challenging an employment practice.

---

[3]*Meacham v. Knolls Atomic Power Laboratory*, 461 F.3d 134, 142 (2nd Cir. 2006) ("The best reading of the text of the ADEA-in light of *City of Jackson* and *Wards Cove*-is that the plaintiff bears the burden of persuading the factfinder that the employer's justification is unreasonable."); *Pippen v. Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006) ("Thus, after an employee establishes a prima facie case of disparate impact age discrimination under the ADEA, the burden of production shifts to the employer to assert that its neutral policy is based on a *reasonable* factor other than age. . . . [A]n employee must ultimately persuade the factfinder that the employer's asserted basis for the neutral policy is *unreasonable*." (emphasis in original).); *Durante v. Qualcomm, Inc.*, 114 Fed.Appx. 603, 607 (9th Cir. 2005) ("Qualcomm [defendant] produced unrebutted evidence that its termination decisions were made to satisfy the differing business needs of the varying divisions and departments . . .."); *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767 (7th Cir. 2006) (The court found it error to instruct the jury that the RFOA requirement was an affirmative defense.).

The difficulty in deciding under which section this case arises is emphasized by the parties' suggested methods of identifying a statistically significant disparate impact. As pointed out by Defendant, in a disparate impact hiring case, which is no longer cognizable after *City of Jackson*, the Eighth Circuit would look either to the number of available applicants in the job market that were members of the protected class, or the number of actual applicants that were a member of the protected class, compared with the number of members of the protected class that were actually hired. *See e.g. Hameed v. International Association of Bridge, Structural and Ornamental Iron Workers, Local Union No. 396*, 637 F.2d 506, 512 n.6 (8th Cir. 1980). In the alternative, the defendant suggests, based on their assumption that this is a hiring case, that the correct statistical analysis is a comparison of those who were subject to the no rehire policy that were members of the protected group with those who were subject to the no rehire policy that were not members of the protected group. *Def. Mot. in Sup. Of Mot. for Sum. Judg.*, 9-10. The first suggestion by the Defendant, to use qualified applicants in the general labor pool, is flawed. Applicants from the general labor pool would not be subject to the rehire policy at issue, because they were not former employees. The second suggestion for statistical analysis by the Defendants would clearly result in a finding of no disparate impact, as all former employee-agents were subject to the rehire policy, not only those who were members of the protected group. As this illustrates, this case is not a hiring case, under the normal use of that term.

The Court thus turns to § 623(a)(2), which states: "it shall be unlawful for an employer. . . to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age. . .." 29 U.S.C. at 623(a)(2). However, § 623(a)(2), which does allow a disparate impact claim under *City of Jackson*, specifically applies to

employees.  *See Smith v. City of Des Moines, Iowa*, 99 F.3d 1466, 1470 (8th Cir. 1996) ("Section 623(a)(2) of the ADEA governs conduct with respect to employees only . . ..").  Consequently, the facts of this case do not fit squarely into either section of the ADEA. The effect of deciding that it is a hiring case, is to find that no cause of action exists, *City of Jackson*, 544 U.S. at 236 n.6, and finding that it is a § 623(a)(2) case requires finding the action affected the claimants status as employees.  This Court, in looking to the purpose stated by congress in the ADEA, the legislative history of the Act, as well as Supreme Court and Eighth Circuit precedent, has determined that this case raises an important question of discrimination which should not fail solely because the plaintiffs were not employees at the time the adverse employment action was taken.[4]  Rather, the most logical approach is to treat the rehire policy as a part of the Reorganization Plan which effected all employee-agents.

The first place this Court looks is to the Congressional Statement of findings and purpose. 29 U.S.C. at § 621.  This section states in part:

> (a) The Congress hereby finds and declares that -- (1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to *regain employment* when displaced from jobs; . . . (4) the existence in industries affecting commerce, of *arbitrary discrimination* in employment because of age, burdens commerce and the free flow of goods in commerce.

*Id.* at §§ 621(a)(1) & (4) (emphasis added).  The concerns of Congress, that employment actions which have the affect of leaving older workers in a disadvantaged position of seeking employment, are the same concerns that are raised by the present case.  The Defendant's actions clearly left a large number of former employee-agents, who were members of the protected group,

---

[4]This is not to say that the Plaintiff will necessarily succeed, but rather that if the challenged action had an adverse impact on employees over age 40, then such action should be scrutinized, to determine if the company used reasonable factors other than age in making its decision.

seeking employment, and being unable to seek that employment from the Defendant for the period of one or two years.[5]  The legality of the Reorganization Plan is not before this court,[6] but the effect of that reorganization was to require the former agents to either become independent contractors, or to seek other employment.  The Defendants then implemented a rehire policy which barred this same group from reapplying for positions within the company.  Although the Reorganization Plan alone is not being challenged, the rehire policy is inextricably linked to that plan, affecting the same group of employee-agents.  The Court believes that it was the intent of Congress to prevent actions such as this, which could be described as an action which "otherwise adversely affect[s the claimants] status as employee[s]."  29 U.S.C. at § 623(a)(2).

This Court is also persuaded by the legislative history.  As the Supreme Court in *City of Jackson* points out, the Congressional purpose was to prevent the discriminatory impact that certain conditions of employment can have on older workers.  544 U.S. at 235.  The Court relies on the Report of the Secretary of Labor, The Older American Worker: Age Discrimination in Employment 5 (June 1965), which was reprinted in the U.S. Equal Employment Opportunity Commission, Legislative History of the Age Discrimination in Employment Act (1981) Doc. No. 5, and is known as the Wirtz Report.  *Id*. at 233.  This report supports an interpretation of the ADEA to include a disparate impact claim as it found that discriminatory effects result from "[i]nstitutional arrangements that indirectly restrict the employment of older workers."  *Id.* (citing

---

[5]The amount of time an individual was receiving severance benefits dictated the length of time they were barred from rehire.

[6]Although the Court is not required to rule on the legality of the Reorganization Plan, it seems clear that this plan would not be prohibited under the ADEA.  The Defendants reasons for undertaking this action would constitute reasonable factors other than age.  The Defendants intent to convert all of its agents to independent contractors was evidenced by the fact that they no longer hired employee-agents, but only independent contractor agents.

*The Wirtz Report*, 15) (alterations in original).  Further, the Supreme Court points out that

"Congress had directed the thrust of the Act to the *consequences* of employment practices, not

simply the motivation."  *Id.* at 234 (internal citations omitted) (emphasis in original).  The focus

on indirect restrictions supports this Court's conclusion, that actions, such as those at issue in the

present case, need to be addressed, and were intended to be addressed by the ADEA.

      This result is also supported by Eighth Circuit precedent, interpreting the ADEA, prior to

the Supreme Court's decision in *City of Jackson.*  As the Eighth Circuit stated in *Smith v. City of

Des Moines, Iowa*, "we have on several occasions applied disparate impact analysis to age

discrimination claims."  99 F.3d 1466, 1469 (8th Cir. 1996).  In *Leftwich*, the court found that a

disparate impact claim was cognizable under § 623(a)(1), prior to the Supreme Court's decision,

but nonetheless showing an acceptance of disparate-impact claims in this Circuit.  702 F.2d at

690, *see also Lewis v. Aerospace Community Credit Union*, 114 F.3d 745, 750 (8th Cir. 1997)

(The court affirmed the district court's granting of summary judgment because plaintiff failed to

provide sufficient evidence in support of its disparate impact discrimination claim.).  Many of the

cases involve facts related to a reduction-in-force (RIF), which is the same as the case at hand,

with the minor distinction that the policy the Plaintiff is challenging is the rehire policy, not the

reduction itself.  *See Lewis*, 114 F.3d at 746 ("eliminated several positions"), *Leftwich*, 702 F.2d

at 688 ("recommended a plan which would reduce the faculty from fifty-one members to

approximately thirty-four members").  The termination, and subsequent refusal to rehire over

6000 employees, raises serious questions that need to be addressed, and which are most

appropriately addressed under § 623(a)(2) as a policy which "tend[s] to deprive any individual of

employment opportunities," thus adversely affecting their status as an employee.  29 U.S.C. §

623(a)(2).

## B.  DISPARATE IMPACT

A disparate impact claim challenges an "employment practice that [is] facially neutral in [its] treatment of different groups, but in fact fall[s] more harshly on one group than another." *International Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 335 (1997), *Lewis*, 114 F.3d at 750.  In order to present a prima facie case the plaintiff is "responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *City of Jackson*, 544 U.S. at 241.  The plaintiff must provide evidence of a specific employment practice, and that the employment practice had a disparate impact on members of the protected class.

The first element of a prima facie case is the identification of a specific employment practice responsible for the disparate impact. *Pippin*, 440 F.3d at 1200.  (In order to present a prima facie case of discrimination the Plaintiff must "show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group.").  It is necessary that the plaintiff do more than generally allege discrimination, or point to a generalized policy that leads to discrimination. *Id.*  In the present case, the Plaintiff challenges the Defendant's rehire policy, adopted by the Defendant on September 26, 2006.  This is a specific policy adopted by the Defendants that Plaintiff challenges violates the ADEA.

Secondly, the Plaintiff must show a disparate impact.  In support of a claim for disparate impact the plaintiff must present evidence of a statistically significant impact on members of the protected group.  Tests of statistical significance must eliminate chance as the cause of the disparate impact; most courts have found that a difference is significant at the five percent significance level. *Hameed*, 637 F.2d at 513.  The question raised in the present action is not whether the evidence provided by the Plaintiff shows a statistically significant difference, but

rather whether the analysis used in reaching that result is the correct analysis. As noted above, the

Defendant would have the Court compare the number of employees who applied for jobs with

Allstate that were in the protected group, with those who were actually employed by Allstate that

were members of the protected group.[7] Or, in the alternative, would look at those employees that

were terminated under the Reorganization Plan, and compare those within the protected group

that were not rehired, with those not in the protected group that were not rehired. The Plaintiff

suggests the Court compare the percentage of Allstate employees within the protected group who

were disqualified from rehire, with the percentage of Allstate employees not within the protected

group, that were disqualified from rehire. *Pl. Memo. in Support of its Mot. for Partial Sum.

Judg. as to Liability*, 8.

      As the Court decided above that this case is to be decided under § 623(a)(2), it would be

inconsistent to now use a hiring analysis to determine whether there was a disparate impact.

---

[7]The Defendants cite to a Sixth Circuit opinion which held that "[t]he disparity identified by appellants does not show that the moratorium had the effect of preventing Federal Forge [defendant] from hiring a percentage of workers 40 and over that was representative of the qualified labor pool." *Abbott v. Federal Forge*, 912 F.2d 867, 874 (6th Cir. 1990). However, the facts in that case are distinguishable; the former employees were given a preference in hiring for the first 12 months after they had been laid off due to a plant closure. *Id.* at 873. Following the twelve month preference period they then became members of the general applicant pool. *Id.* Only after a grievance was filed by the United Auto Workers Union regarding seniority and pension benefits for former employees did the defendant Federal Forge place a moratorium on hiring. *Id.* at 870-871. Once a decision had been made, Federal Forge lifted the hiring moratorium. *Id.* Only once the Plaintiffs were members of the general applicant pool did the policy effect them, unlike the present case where the rehire policy immediately effected all former employee-agents. The Second distinction that is important, is that the plaintiffs in that case never raised the statistical method suggested by the Plaintiff in the case at bar. In fact, the only statistical evidence provided by the plaintiffs was a comparison between the people hired during the moratorium, and the group barred from hire due to the moratorium. *Id*. at 872-73. In responding to this statistical data, the court stated that this is not the correct analysis in a disparate impact hiring case. *Id.* at 873. Furthermore, both parties in *Federal Forge* addressed the case as a hiring case. *Id.* at 870 (charging that the moratorium amounted to a refusal to hire on the basis of age. . ..").

Treating the Reorganization Plan as inextricable from the rehire policy, the appropriate analysis is that suggested by the Plaintiff; comparing the total number of Allstate employees within the protected group that were affected by the policy, with the number of Allstate employees not in the protected group that were affected by the policy. When an employee is terminated, the court treats this as a term of employment, analyzed under § 623(a)(2). The current case is no different, the employees were terminated, and then unable to apply for an alternate position.

The Plaintiff has provided evidence that over 90% of the employees that were subject to the Reorganization Plan, and subsequently disqualified from rehire, were over age 40. *Pl. Memo. in Sup. Of Mot. For Partial Sum. Judg. as to Liability*, 8. Furthermore, out of the total number of Allstate employees that were affected by the rehire policy, 23 percent were over age 40, compared with 2.7 percent of those not within the protected group. An alternate measure used by the Plaintiff, which the Court finds persuasive, is that the average age of employees subject to the rehire policy was 51.1 years old compared with the average age of Allstate's entire workforce which was 39.4 years old. *Id.* at 9. The Defendant has not provided the Court with evidence that Plaintiff's statistical analyses are mathematically incorrect, but rather, have argued that the analyses are inappropriate. As the Court has determined this analysis is appropriate, the Court further finds that the Plaintiff has provided sufficient evidence to show a disparate impact on the protected group, sufficient to sustain a motion for summary judgment in their favor.

### C. REASONABLE FACTORS OTHER THAN AGE

Under the second step of the analysis articulated above, the Defendant has the burden of production, on the RFOA provision, after the Plaintiff has provided evidence of a prima facie case. *Pippen*, 440 F.3d at 1200 ("Thus, after an employee establishes a prima facie case of disparate impact age discrimination under the ADEA, the burden of production shifts to the

employer to assert that its neutral policy is based on a *reasonable* factor other than age. . . .). The Defendant has articulated a number of reasons why the rehire policy was adopted, the Plaintiff generally disputes the reasonableness of the explanations given. The first reason articulated by the Defendant was to avoid customer confusion and conflict because of interaction with a former agent working in a different job position, when the customer was assigned to a new independent agent. A second reason was to encourage former employee-agents to participate in the independent contractor agency program. A third reason testified to by Ms. Zuzich was to prevent double-dipping; having people on the payroll that were also receiving severance benefits. A fourth reason was to prevent those individuals who had decided not to continue a relationship with the Defendant, from working next to other Defendant employees. Fifth, the Defendant wanted to implement a rehire policy in connection with the Reorganization Plan that was consistent with its Special Retirement Opportunities Program, that contained a similar rehire policy.

The Plaintiff then has the burden of proving that the above cited reasons are unreasonable. *Meacham*, 461 F.3d at 142 ("The best reading of the text of the ADEA-in light of *City of Jackson* and *Wards Cove*-is that the plaintiff bears the burden of persuading the factfinder that the employer's justification is unreasonable.") The Plaintiff recounts a lot of information from the deposition of Ms. Zuzich, who developed and implemented the rehire policy, in an effort to show the lack of reasonableness of any of Defendants proffered reasons for the policy. The Plaintiff points out that Ms. Zuzich could not recall involving anyone else in the decision making process before implementing the rehire policy, other than in-house counsel and an individual from sales distribution. The Plaintiff further states that Ms. Zuzich did not inquire as to whether any of the concerns she had with rehiring former employee-agents (reasons one and four above) had

occurred with those agents who had been rehired, during the period between the agents termination, June 30, 2000, and the implementation of the rehire policy September 26, 2000. Ms. Zuzich further testified that she did not research whether the rehire policy would be beneficial to the Defendant, she did not recall reviewing any documents associated with the Reorganization Plan, nor did she make any effort to determine the age demographics of the former employee-agents who would be subject to the rehire policy. The Plaintiff refutes reason two with evidence that all former employee-agents had to decide to join the independent contractor agent program by June 1, 2000, three months prior to the implementation of the rehire policy. Therefore, the Defendant could not have intended the rehire policy to encourage enrollment in the independent contractor program, because the date for making the decision had passed. The Plaintiff refutes reason number three above, by pointing to Ms. Zuzich's testimony that the Defendant had a standard policy in place that would prevent double-dipping. This policy required any individual who was rehired by the Defendant, and who was also receiving severance benefits, to repay the unused portion of the severance benefit. Plaintiff points to deposition testimony that Ms. Zuzich could not give an adequate explanation as to why a special rehire policy was required to cover the former employee-agents subject to the Reorganization Plan; rather, Plaintiffs' claim that the standard policy was sufficient, making this factor unreasonable. The Plaintiff claims that reason five, consistency with the Special Retirement Opportunity Program, is unreasonable because of the significant differences between the two programs.

As both parties have provided evidence on the factors considered in implementing the rehire policy, this Court is not in a position to decide on summary judgment whether these factors were reasonable. A reasonable jury could find for the Plaintiff that the Plaintiff has provided sufficient evidence that the proffered reasons are unreasonable.

## V. CONCLUSION

Plaintiff has fulfilled its burden of providing evidence supporting its claim of a disparate-impact resulting from the Defendant's rehire policy adopted in conjunction with their Reorganization Plan. Defendant has not presented sufficient evidence to rebut this claim, and therefore no material issue of fact exists as to Plaintiff's prima facie case. However, the Defendant has introduced evidence that the challenged employment policy was adopted based on reasonable factors other than age. The Plaintiff has the ultimate burden of proving that the reasons offered by the Defendant were unreasonable. The Plaintiff has provided sufficient evidence that a reasonable jury could find that the challenged policy was unreasonable, and therefore the question is not appropriate for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Liability [doc. # 42] is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment is **DENIED**.


Dated this <u>19th</u> Day of October, 2006.



E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE